UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MISTY MARIE GUADAGNO,

                                      DECISION AND ORDER

                    Plaintiff,

                                      18-CV-6437L

            v.

ANDREW SAUL,
Commissioner of Social Security,

                    Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner.

On July 11, 2014, plaintiff, then 28 years old, filed applications for a period of disability and disability insurance benefits, and Supplemental Security Income benefits, under Titles II and XVI of the Social Security Act. Plaintiff alleged an inability to work since April 22, 2011. (Dkt. #9 at 15). Her applications were initially denied.

Plaintiff requested a hearing, which was held on August 23, 2016 via videoconference before Administrative Law Judge ("ALJ") Roxanne Fuller. The ALJ issued a decision on January 19, 2017, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #9 at 15-28). That decision became the final decision of the Commissioner when the Appeals Council denied review on December 12, 2017. (Dkt. #9 at 1-3). Plaintiff now appeals.

The plaintiff has moved (Dkt. #12) and the Commissioner has cross moved (Dkt. #17) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

**DISCUSSION**

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision recites detailed findings of fact and recites the bases upon which they rest. Upon careful review of the complete record, I believe that the ALJ applied the correct legal standards, and that her finding that plaintiff is not totally disabled is supported by substantial evidence.

In assessing plaintiff's application, the ALJ summarized plaintiff's medical records, particularly with respect to sleep apnea, depression, and substance abuse in sustained remission, which she determined together constituted a severe impairment not meeting or equaling a listed impairment. I believe the evidence supports the ALJ's conclusion that plaintiff, at the time of her alleged onset date a 24-year-old woman with a high school education and past relevant work as a cook kitchen helper, fast food worker, and home health aide, was not totally disabled, due to the ALJ's finding at step five that several positions existed in the economy that plaintiff could perform, including cleaner, counter clerk and packer. (Dkt. #9 at 27-28).

## I. The ALJ's Assessment of Plaintiff's Sleep Disorder(s)

Plaintiff's chief argument is that the ALJ, having determined that plaintiff's sleep apnea was "severe," failed to complete the record by obtaining an opinion from plaintiff's treating sleep specialists with respect to the limitations associated with her sleep disorder(s).[1] Plaintiff further argues that in determining her sleep disorder-related limitations, the ALJ inappropriately relied on the October 30, 2014 opinion of consulting internist Dr. Karl Eurenius ("Eurenius") and the October 3, 2014 opinion of consulting psychologist Dr. Adam Brownfeld ("Brownfeld"). (Dkt. 493-97, 498-501). Plaintiff argues that because these opinions were rendered nearly two years prior to the hearing, they were "stale."

The Court disagrees. The ALJ's duty to develop the record is not "infinite," and when, as here, "evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary." *Kinslow v. Colvin*, 2014 U.S. Dist. LEXIS 25717 at *12 n.10 (N.D.N.Y. 2014). *See also Rosa v. Callahan*, 168 F.3d 72 at 79 n.5 (2d Cir. 1995) (where "there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"); *Vasquez v. Saul*, 2019 U.S. Dist. LEXIS 189972 at *18 (S.D.N.Y. 2019) (same).

---

[1] Plaintiff tangentially argues that the ALJ should have identified plaintiff's severe sleep disorder as idiopathic hypersomnia, with which she was diagnosed in or around August 2015, and not sleep apnea, with which plaintiff had initially been diagnosed. Plaintiff concedes that in or about May 2015, she underwent testing which showed that her sleep apnea had resolved. When symptoms that had previously been attributed to her sleep apnea persisted thereafter, plaintiff was tested and diagnosed with idiopathic hypersomnia. Regardless, the central question before the Court is not whether the ALJ should ideally have identified plaintiff's sleep disorder with reference to her first diagnosis or her second. Rather, the Court's foremost concern is whether the record before the ALJ was sufficiently complete with respect to plaintiff's sleep disorder treatment as a whole, whether the ALJ gave due consideration to all of that evidence, and whether the ALJ's findings concerning the *limitations* posed by plaintiff's sleep disorders (by any name) were supported by substantial evidence of record. The ALJ's decision discusses plaintiff's entire longitudinal history of sleep disorder treatment and considers all of the symptoms reported by plaintiff under both the sleep apnea and idiopathic hypersomnia diagnoses. As such, assuming *arguendo* that the ALJ erred when she failed to identify idiopathic hypersomnia as a severe impairment instead of, or in addition to, sleep apnea, that error was harmless.

Here, the record with respect to plaintiff's sleep disorder treatment initially included progress notes from Unity Sleep Disorders Center from July 2013 through August 2014. (Dkt. #9 at 453-77). At the hearing, the ALJ informed plaintiff of her right to submit additional records (or to request a subpoena for them), and held the record open for a period of time for that purpose. At plaintiff's request, the ALJ also obtained, and added to the record, treatment records from several additional sources, including the Sleep Insights medical group, where plaintiff treated with sleep specialist Dr. Jacob Dominik and others from April 2015 through February 2016. (Dkt. #9 at 502-12). The ALJ stated that she had reviewed the record in its entirety, and her decision discusses plaintiff's history of sleep disorder treatment at Unity Sleep Disorders Center and Sleep Insights in chronological detail, describing plaintiff's symptoms of fatigue and decreased alertness, her treatment with medication and a CPAP machine, changes to her medication, the resolution of her sleep apnea, and her treatment for idiopathic hypersomnia.

In addition to discussing and relying upon plaintiff's treatment records, the ALJ also gave "great" weight to the opinion of consulting internist Dr. Eurenius, who examined plaintiff in October 2014 and opined that plaintiff had some mild exertional limitations due to neck and low back pain. The ALJ likewise afforded "great" weight to the opinion of consulting psychologist Dr. Brownfeld, who found that plaintiff had some mild and moderate limitations in dealing with stress, keeping a schedule, learning new tasks, and performing complex tasks independently. (Dkt. #9 at 26, 493-97, 498-501). Both consulting opinions noted and discussed plaintiff's sleep disorder diagnosis, which was described as sleep apnea by Dr. Eurenius and sleep apnea and posttraumatic hypersomnolence by Dr. Brownfeld. *Id*.

Nor were those opinions, rendered in October 2014, "stale" by the time of plaintiff's August 2016 hearing, as plaintiff suggests. "For a medical opinion to be stale, not only must there

4

be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes 'indicating a claimant's condition has deteriorated' over that period." *Vazquez v. Saul*, 2019 U.S. Dist LEXIS 139858 at *7 (W.D.N.Y. 2019) (*quoting Whitehurst v. Berryhill*, 2018 U.S. Dist. LEXIS 137417 at *4-*5 (W.D.N.Y. 2018) (internal brackets omitted). Here, the treatment notes of record do not testify to any appreciable deterioration in plaintiff's condition subsequent to the opinions by Dr. Eurenius and Dr. Brownfeld. To the contrary, plaintiff's final and most recent sleep disorder treatment record with Dr. Dominik indicates that adjustments to her medications had been beneficial, and she reported being able to "maintain alertness throughout the day," and was feeling "good" and "normal." (Dkt. #9 at 21-22, 512).

The ALJ's RFC finding concerning plaintiff's sleep disorder-related limitations was based upon consideration of several years' worth of treatment notes, relevant opinions by a consulting internist and consulting psychologist who assessed plaintiff's physical and mental limitations during the relevant period and expressly considered her sleep disorder diagnoses, and plaintiff's own testimony concerning her symptoms and her daily activities, including engaging in part-time work as a cleaner. (Dkt. #9 at 26). Taken together, this evidence presented a sufficiently-complete record to support the ALJ's assessment of plaintiff's sleep disorder-related exertional and non-exertional limitations, even in the absence of a treating physician's opinion. Indeed, the ALJ explicitly considered plaintiff's reported symptoms of drowsiness and lack of alertness in formulating her RFC determination, and included limitations calculated to address them:

> *Due to the claimant's sleep apnea* and back pain, I limited the claimant to light exertional work with only occasional climbing ramps or stairs; never climbing ladders, ropes or scaffolds; occasional balancing, stooping, crouching, kneeling and crawling; occasional exposure to moving mechanical parts; occasional operating a

motor vehicle; and occasional exposure to unprotected heights. *Due to the claimant's sleep apnea*, depression and history of substance abuse, I limited the claimant to the performance of simple routine repetitive tasks.

(Dkt. #9 at 26) (emphasis added).

On balance, I find that the ALJ sufficiently developed the record, that the ALJ gave due consideration to plaintiff's sleep disorder-related limitations, that her RFC finding is supported by substantial evidence of record, and that the record simply does not support plaintiff's claim of total disability. There is no dispute that the positions identified by the vocational expert at plaintiff's hearing as positions she could perform are consistent with the ALJ's RFC determination, as well as with plaintiff's age, educational background and past work experience. As such, I find no reason to modify the ALJ's decision.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings (Dkt. #12) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #17) is granted. The Commissioner's decision that plaintiff was not disabled is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 10, 2020.